KERN & SON v. WILSON.

1. **Replevin:** PLEADING: ALLEGATION OF EXTENT OF INTEREST: MATERIALITY: EVIDENCE TO SUSTAIN. In an action for the recovery of specific personal property, the plaintiff must state in his petition the extent of his interest in the property; (Code, § 3225;) and such allegation is a material one. And where he states that he is the absolute and unqualified owner, a chattel mortgage of the property to him is not evidence to sustain such allegation, and should be rejected, when offered for that purpose; and where such evidence was admitted, and it was the only evidence of plaintiff's ownership, the court should have directed a verdict for the defendant.

2. **Chattel Mortgage:** ADDITIONS TO STOCK MADE BY "SECOND PARTY" : CONSTRUCTION. Where a chattel mortgage covered a stock of drugs, and additions made thereto by the " second party," *held* that the court had no right, in construing it, to disregard the plain words used by the parties, and hold that by "second party " they meant " first party," and to give effect to it accordingly.

3. ———: ON "DRUG STOCK": WHAT INCLUDED. A chattel mortgage conveying a certain " drug stock " *held* to include all articles ordinarily and usually kept in a drug store at the place where the stock was situated, and that it was for the jury to determine from the evidence what such articles consisted of.

*Appeal from Wright District Court*—HON. S. M. WEAVER, Judge.

FRIDAY, DECEMBER 16.

ACTION to recover specific personal property which the defendant, as sheriff, had taken possession of by virtue of a

certain writ of attachment against J. C. Dwyer. Trial by jury. Verdict and judgment for the plaintiffs. The defendant appeals.

*E. C. Walsh* and *Nagle & Birdsall*, for appellant.

*R. H. Whipple* and *Cook & Filkins*, for appellees.

SEEVERS, J.—I. It is stated in the petition that the "plaintiffs are the absolute and unqualified owners of a stock of drugs,

1. REPLEVIN: pleading: allegation of extent of interest : materiality: evidence to sustain.

late in the possession of J. C. Dwyer in a certain store building * * * in Dows, Iowa; that they acquired said ownership by purchase; that defendant wrongfully detains possession of the same." The plaintiffs offered to introduce in evidence a chattel mortgage executed by Dwyer to them upon the goods in controversy, as they claimed. To this the defendant objected, upon several grounds, which were overruled. The defendant asked the court to instruct the jury that the "plaintiffs allege that they are the absolute and unqualified owners of the property in controversy in this case. The only evidence of such ownership introduced by them being a chattel mortgage, you are instructed that plaintiffs have failed to establish their ownership of the property in controversy, and your verdict must be for the defendant." This instruction was refused. It is provided by statute, in actions of this character, that "the facts constituting the plaintiff's right to the present possession, [of the property,] and the extent of his interest in the property, whether it be full or qualified ownership," must be stated in the petition. (Code, § 3225.) This action was commenced in May, 1886, and the mortgage was given to secure the payment of two promissory notes, one of which became due in August, 1886, and the other in August, 1887. There are authorities which hold that, after default in the payment of the money secured by a chattel mortgage, the title to the mortgaged property becomes absolute in the mortgagee; but prior to that time,

at least in this state, the mortgagee is not the unqualified and absolute owner of such property. The right of redemption certainly exists. (*Hubbard v. Hartford Fire Ins. Co.*, 33 Iowa, 325; *Goldsmith v. Willson*, 67 Id., 667; *Evans v. St. Paul Harvester Works*, 63 Id., 204.) The plaintiffs, however, under the provisions of the mortgage, were, at the time the action was commenced, entitled to the possession of the mortgaged property. (Code, § 1927.) This right, however, is much less than absolute ownership. The provision of the statute requiring the plaintiff to state the nature and extent of his interest means something; and it follows, when it is pleaded, that the plaintiffs' right to the possession of the property is because they were the absolute and unqualified owners thereof, and they must establish on the trial such ownership. The object of the statute was to advise the defendant of the nature of the plaintiffs' claim to the property, to the end that he could intelligently defend. The rule is that the proof must sustain the material allegations of the petition. (*Woolsey v. Williams*, 34 Iowa, 413; *Edgerly v. Farmers' Ins. Co.*, 43 Id., 587.) The court therefore erred in admitting the mortgage in evidence, and also in refusing the instruction above set out.

II. As the plaintiff may see proper to amend the petition, it is deemed necessary to determine certain other questions which may arise on another trial. The mortgage states that "I, J. C. Dwyer, *  *  * in consideration of. *  *  *, to me in hand paid by J. B. Kern & Son, *  *  * party of the second part; *  *  * said mortgage covers all of said stock, and additions to the same that may be made from time to time by second party." It became a material question on the trial whether this mortgage covered additions to the " drug stock " made by the mortgagor. The only provision in the mortgage in relation to such additions is the one above set out, which refers only to additions made by the second party or mortgagees. It

2. CHATTEL mortgage: additions to stock made by "second party": construction.

was the province of the court to construe the mortgage, and, looking at all its provisions, the court concluded that the additions made by the second party were intended to mean, and did mean, additions made by the first party. In other words, the court reached the conclusion that there was a mistake made in drafting the mortgage, and that this was apparent on its face. This conclusion ignores the positive language used in the mortgage to express the intention of the parties. The effect of the words used in the mortgage is that all additions to the stock made by J. B. Kern & Son are covered by and included in the mortgage; and the court held that, looking at the whole mortgage, the words must be construed to mean J. C. Dwyer. In construing the mortgage, the court was required to ascertain the actual meaning of the parties, or as nearly so as the words used would permit, without doing violence thereto, or to the rules of law. (*Moorman v. Collier*, 32 Iowa, 138.) It was not competent for the court, in the effort made to ascertain the meaning of the parties, to strike out certain words, and insert others, so as to give a directly opposite meaning to the mortgage to that expressed on its face.

III. The property is described in the mortgage as follows: "The drug stock purchased by first party of second party at Belmond, Iowa, * * * to be located at Dows. * * *" It becomes material on the trial to determine what the words "drug stock" embraced; that is, what items or description of property were included therein. Without referring to the particular rulings of the court, we think the proper construction is that "drug stock" includes all articles· ordinarily and usually kept therein at the place where the stock was situated, and it was a question for the jury to determine what such articles consisted of. Whether jars, show-cases, and other articles were included in the terms of the mortgage, it was for the jury to say, under evidence which was, or at another trial may be, introduced. Any one hav-

3. ———: on "drug stock": what included.

ing constructive or actual notice of the mortgage, we think, would naturally conclude that it included all property usually kept in a drug stock at the place where it was situated. A drug stock has a different meaning from the entire stock of drugs, medicines, oils, paints and goods of every description now kept in a store-room. (*Van Evera v. Davis*, 51 Iowa, 637.) In that case it was conceded by counsel that certain property designated as fixtures, which consisted of a number of " bottles, glass funnels, marble till-file, mortars, globe, and other like articles," were not included in the terms of the mortgage. This concession, it may be supposed, was made because the words of the mortgage only included " drugs, medicines, oils, paints, and goods " kept for sale; and the contention in that case was whether evidence was admissible to show whether the parties intended to include anything else. It was held that such evidence was inadmissible. It therefore follows that the fifth instruction given to the jury is correct; and our views as to other rulings made by the court in striking out evidence which, possibly, are more favorable to the appellant than he was entitled to, are sufficiently indicated. What we have said sufficiently indicates that the objection to the third instruction is not well taken. As at present advised, we do not think the objections made to the ninth instruction are tenable.

REVERSED.