Decided 21 January, 1908.

## MILLER *v.* ACHURCH.

93 Pac, 332.

EXECUTION SALE—SETTING ASIDE—ACQUIESCENCE.

1. Parties acquiescing in the action of the court in setting aside an execution sale and ordering a resale are bound thereby.

SAME—PERSONS WHO MAY QUESTION VALIDITY OF SALE.

2. At common law the confirmation of a sale on execution might be objected to and the same set aside by plaintiff, defendant, or the purchaser.

SAME.

3. Under Section 242, Subd. 1, B. & C. Comp., providing that plaintiff in execution shall be entitled to an order confirming a sale thereunder, unless the judgment debtor or his representatives shall file objections, does not deprive any other interested person than the debtor of the right to object who by common law possessed that right; and hence plaintiff may object.

SAME—RESALE—STATUTORY PROVISIONS.

4. The mere fact that plaintiff in execution refused to receipt to the sheriff for the amount of his bid, or to credit his judgment, would not of itself be evidence of an abandonment or withdrawal of his bid, so that there would be in law no sale to him within Section 242, Subd. 1, B. & C. Comp., providing that on

a resale, the purchaser's bid at the former sale shall be deemed renewed and to continue in force, and no bid shall be taken except for a greater amount.

SAME—NO RIGHT TO WITHDRAW BID ON EXECUTION SALE.

5. Property having been struck off to plaintiff in execution, he had no right to withdraw his bid, and could be excused only by an order of the court, and, if the sale was considered by the court regular, it had the power to enforce the same, and cancel the judgment *pro tanto*, notwithstanding plaintiff's refusal to receipt to the sheriff.

SAME—RESALE—FORMER BID RENEWED.

6. Under Section 242, Subd. 1, B. & C. Comp., providing that on a resale on execution the purchaser's bid at the former sale shall be deemed renewed, and no bid shall be taken except for a greater amount, and by subdivision 3, providing for a repayment to the former purchaser, if the property sell for a greater amount to another, where the court in ordering a resale did not include therein any release of plaintiff in execution from his bid, he continued to be bound by it, and the sheriff was bound to consider it as renewed.

From Wallowa: WILLIAM SMITH, Judge.

Statement by MR. COMMISSIONER SLATER.

On July 23, 1906, plaintiff obtained a judgment against Achurch & Hammack for the aggregate sum of $2,933.40, besides costs and disbursements, and a decree for the foreclosure of a mortgage lien upon some town lots to pay the judgment. Defendant, First Bank of Joseph, also obtained judgment in the same suit against Hammack and wife for the aggregate amount of $265, which was adjudged to be a second lien and to be paid out of the proceeds of the sale of the property, which was ordered to be made. Execution issued, and on September 25, 1906, a sale took place at which the plaintiff bid $2,500 for the property, and the same was struck off to him. A return to that effect was made and filed October 6, 1906, from which it appears, after reciting the fact of the sale, that "Miller after bidding said above named sum refused to pay over the money so bidden for said real property and refused to credit the above named sum so bidden on the judgment and execution herein, and has since continued to refuse and neglect to pay over said sum or credit said judgment therewith."

Afterwards, on the 27th of October, the sale was set aside on plaintiff's motion, a new execution ordered issued, and the property resold, and the costs thereof charged to plaintiff. At the second sale, plaintiff not appearing, the property was struck off to George Mack for the sum of $1,500, and a return to that

effect was made and filed December 12, 1906. Defendant, First Bank of Joseph, moved for confirmation of the sale, but on May 14, 1907, plaintiff filed his objections to confirmation of the sale, and moved that it be set aside, on the ground that the property had been sold for $1,000 less than his bid at the former sale, contrary to the provisions of Section 242, subd. 4, B. & C. Comp. An order was made overruling the objections and denying plaintiff's motion, and confirming the sale, from which he appeals.                                        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Charles E. Cochran.*

For respondent there was a brief and an oral argument by *Mr. Charles H. Finn.*

Opinion by MR. COMMISSIONER SLATER.

1. The reason which moved the court to set aside the first sale does not appear in the record, nor is it material that it should, for the action of the court in setting aside the sale was not questioned by any person interested, and it became legally binding on all parties who acquiesced. If plaintiff has a right to be heard on his motion at all, it seems to us that this second sale must be set aside as a result of the positive declaration of the statute that "upon a resale, the bid of the purchaser at the former sale shall be deemed to be renewed and continue in force, and no bid shall be taken except for a greater amount": Section 242, subd. 4, B. & C. Comp.

The question presented by the record is not inadequacy of price alone, but the legal effect of the act of the sheriff in refusing to recognize plaintiff's former bid as renewed and continuing in force, and accepting another bid of a smaller amount. If one is the highest bidder, and the officer fraudulently refuses to recognize his bid and reports the property sold on a different bid, he is entitled to have the sale vacated: Freeman, Ex. p. 1787. It is argued by defendants' counsel that plaintiff cannot be heard to object to the confirmation of the sale, for two reasons, namely: (1) That by the terms of Section 242, subd. 1, B. & C. Comp., no one but the judgment debtor, or, in case

of his death, his representative, may object to the confirmation; and (2) that there was in law no sale to plaintiff under the first execution, but that by refusing either to receipt to the sheriff for the amount of his bid or credit his judgment, plaintiff abandoned his bid and thereby withdrew it.

2. The first of these questions involves the proper construction of the statute. Where the procedure to secure the confirmation of a sale on execution has not been regulated by statute, it has been uniformly held that plaintiff, defendant or the purchaser is entitled to prosecute a motion or action to set aside a sale, because each of them may be aggrieved thereby, unless from some cause he has ceased to be prejudiced or affected by it, or by his own misconduct he has brought about the wrong of which he complains. Thus a purchaser may move to vacate a sale because the proceedings are not sufficient to give him title, or for any other reason rendering it unconscionable to enforce his bid, and the plaintiff may likewise do the same because some irregularity, misconduct, mistake or misapprehension has resulted in a sale for an inadequate price, leaving his judgment wholly or partially unsatisfied: 2 Freeman on Ex. § 305; *Beckwith* v. *Mining Co.* 87 N. C. 155.

3. And in *Flint* v. *Phipps,* 20 Or. 340 (25 Pac. 725: 23 Am. St. Rep. 124), Mr. Chief Justice STRAHAN delivering the opinion, this court announced the general rule that "courts always exercise full control over their process, so that suitors shall not be prejudiced either in the form of the writ or the manner of its execution"—citing *McKee* v. *Logan,* 82 Mo. 524. Has the statute in question then taken from plaintiff the right, which he would otherwise possess, to object to the confirmation of a sale, and has the statutory power, which courts have been accustomed to exercise over their process so that suitors shall not be prejudiced either by the form of the writ or by the manner of its execution, been so limited by this statute that it cannot be exercised except upon objections by the judgment debtor or in case of his death by his legal representative? The statute referred to is as follows:

50 OR.——31

"Whenever real property is sold on execution the provisions of this section shall apply to the subsequent proceedings: (1) The plaintiff in the writ of execution shall be entitled, on motion therefor, to have an order confirming the sale, at the term next following the return of the execution, or if it be returned in term time, then at such term, unless the judgment debtor, or in case of his death, his representative, shall file with the clerk 10 days before such term, or if the writ be returned in term time then 5 days after the return thereof, his objections thereto": Section 242, subd. 1, B. & C. Comp.

The purpose of this statute, as we read it, is not to prescribe how and under what circumstances a sale may be confirmed, excluding all others, but the plain intendment of it is to fix a time before which confirmation may not be taken by the plaintiff, and to preserve to the judgment debtor or to his legal representative a reasonable time in which he may object, and, in case he does not object within the time therein specified, he shall be deemed foreclosed of that right. The statute expressly recognizes the right of plaintiff to move for confirmation and of the judgment debtor to object, but there is no language therein which by reasonable intendment can be construed to deprive any other interested person than the plaintiff of the right to move for confirmation, who by common law possessed that right, nor to deprive any other interested person than the judgment debtor of the right to object at any time before confirmation. Upon this view of the law plaintiff had the right to present his objections and have the facts determined.

4. The second point urged by defendants is also insufficient, we think, to deprive plaintiff of the relief he seeks. The mere fact that he refused to receipt to the sheriff for the amount of his bid or to credit his judgment would not of itself be evidence of an abandonment or a withdrawal of his bid. That would be determined by the reason for his refusal. If the proceedings had been so irregular as not to give him a title, or if by an excusable mistake he had inadvertently bid a sum less than the amount of his execution (*Ontario Bank* v. *Lansing*, 2 Wend., N. Y., 260), he then had sufficient reason to cause the sale to be set aside, and, having knowledge of such facts, he could not

receipt or credit his judgment without waiving the right to object to confirmation.

5. Moreover, the property having been struck off to him, he had no right to withdraw his bid, and could be excused only by an order of the court: 2 Freeman, Ex. § 300. If the sale had been considered by the court fair and regular, it had the power to enforce the sale and cancel the judgment *pro tanto,* notwithstanding plaintiff's refusal to receipt. These matters were heard and passed upon by the court, and it ordered a resale. The parties acquiesced, and its decision cannot now be questioned by this court.

6. At common law an order for a resale released the purchaser from his bid and entitled him to a return of his deposit (Freeman, Ex. § 304), but Section 242, subd. 4, B. & C. Comp., provides that "Upon a resale, the bid of the purchaser at the former sale shall be deemed to be renewed and continue in force and no bid shall be taken except for a greater amount"; and subdivision 3 of the same section provides for a repayment to the former purchaser the amount of his bid if the property sell for a greater amount to any other person. The court in ordering a resale did not include therein any release of the plaintiff from his bid, and he continued, therefore, to be bound by it. Hence the sheriff could not ignore it, but he was bound to consider it as renewed.

From these considerations, the order of the court appealed from should be reversed, and the cause remanded, with directions to set aside the sale and order a resale.     REVERSED.

---

Decided 21 January, rehearing denied 31 March, 1908.